Case number 25-3794 PCC Airfoils LLC versus Justin Daugherty et al. Oral argument 15 minutes per side. Mr. Elkhon for the appellant. Good morning. Good morning. May it please the court. The laptop up there, that's good. Sorry? I like the laptop up there. Would you be less pleased if I said I just didn't have time to print my outline and that's why that's why I'm doing it this way? I'm impressed at your confidence that it's gonna stay open the whole time. Mine would be closing and I'd be entering passwords and it'd be so complicated. I make no promises, your honor. May it please the court. This is an appeal about a legal error and a factual error made at the trial court level. The legal error, I think, is fairly clear. My client PCC moved for a preliminary injunction of the trial court level. The motion was denied and throughout the order denying the motion for preliminary injunction, the trial court applied the clear and convincing standard saying that every element that PCC had to show in order to obtain a preliminary injunction, it needed to show by clear and convincing evidence. So let's say I agree with you that that's just not how it's supposed to work even though we have a Sixth Circuit case that might suggest why you could go down that road. So let's just say you're right, you don't look at the four factors and require clear and convincing evidence for each factor like it's an element of a cause of action. So just for the sake of you're right about that, what do we do with Winter? I mean, so Winter has this line about you need to establish a clear showing. What is it referring to? What is the point if, how do we navigate, if we assume you're right about your threshold argument, how is that compatible with what Winter says? Well, I think there's a clear and well-established body of case law that says that a preliminary injunction is not a normal remedy, right? So I understand that it's not something that is freely given. It's given under very specific circumstances and Winter lays out those, the four factors. So there is that holding in Winter and I think it's fairly consistent throughout the country. I'm gonna propose an answer for both of you and just tell me what you think in your time that maybe what's going on, we can't ignore this language, and maybe what's going on is that clear showing requirement isn't a threshold for each of the four factors. It's that once you've balanced the four factors, you know, some strong, some weak. Right. The upshot still has to be a clear showing. Right. So is that the way to think about it? I think that that's a way to think about it and I think it's also a good way to think about it that often, and I think this is pretty clear throughout the country, a stronger showing on one factor can get you farther even if another factor may be a closer call. So for example, Your Honor, in this case, one of the four factors is the relative balance of harms. That's the third factor when seeking a preliminary injunction. In this case, that is overwhelmingly in favor of the appellant, and frankly, the trial court I don't think did much of anything to address this particular factor in its order because this was a unique situation in that the individual defendant, Mr. Daugherty, had been working in the manner in which we wanted him to work. So are you in the third factor, the Your Honor, that one way to apply winter and the clear showing language that Your Honor is talking about is to weigh the various factors, right? And so on the third factor, I think we have an overwhelming case. I don't know why. I mean, the guy can't work. No, he can work. The relief that we are seeking is not that he cannot work for CPP. Up until the issuance of the order denying the motion for preliminary injunction, Mr. Daugherty had been working at other facilities at CPP doing engineering work, and the relief that we were seeking was literally to maintain the status quo. PCC is fine with Mr. Daugherty working at CPP at other facilities. I believe they have over 10 facilities. But not making the product he's most skilled at making? Not making one product, Your Honor. Which is IGT airfoils. So that's his whole career. Well, I mean, that's like saying, you know, Judge Sutton, you can do plumbing. We don't mind. But I don't know how to do plumbing. Well, that's not very helpful to me. He can do engineering, and he can do engineering in this particular industry. We're not chasing him out of the industry. In this industry, companies like PCC and CPP make lots of different parts. So, for example, Mr. Daugherty can work on airfoils for airplanes. So both PCC and CPP make airfoils, which are turbine blades, for power plant generation and jet engines. And he is free to work on the jet engine piece of it, which is just one piece of CPP's business. And in fact, the very clear testimony throughout the preliminary injunction process was that Mr. Daugherty had not been working on IGT airfoils, the one area we didn't want him to work in. And he testified under oath that he was fine. He had plenty to do. He was productive for CPP. And so we were just seeking to keep him out of one particular area. What's not clear, at least to me from the record, is, I mean, it's an interesting mystery at the heart of this case. Did he actually print these or not, right? Correct. So I guess we're talking about the third factor. We could talk about clear and convincing versus a preponderance or whatever the right standard is. Why couldn't we just affirm based on the fact that the record doesn't show any credible, you know, sense that he printed these things? Okay. And that gets to the factual error. So the legal error was the imposition of the incorrect standard. The factual error was the conclusion that Mr. Daugherty did not print. And so first of all, that is infected by the application of the wrong standard. The judge said that we had to show by clear and convincing evidence that he printed the documents, and that's not the correct standard. The standard is preponderance of the evidence, more likely than not. Why shouldn't we just affirm based on your failure to show by a preponderance? Because there is no plausible explanation for the print logs other than that he printed. So the print logs establish, and the experts for both sides agree on this, that he initiated a print process on four documents on April 16th and 17th, which was right when he decided that he was going to leave. In fact, he testified at the preliminary injunction hearing. He was mad at PCC on April the 15th, called his wife, and said, I'm done there. On the 16th and 17th, he initiates the print process on four documents. There's no dispute that those four documents are trade secrets. There are three possibilities agreed upon by all of the experts. Even if we agree with you on that, and I'm not saying that we do, but even if we do, what evidence is there that it was actually misappropriated? If you get over the hump of saying, yes, he printed these documents, what is the evidence of what he did with these documents that's going to get you past a preponderance, assuming that preponderance is the actual right standard that should apply? Right, so that would then fill in the last block that we need for an inevitable disclosure remedy. So for inevitable disclosure, you've got to show... Does inevitable disclosure apply when you don't have a contract? Yes, it does, and the trial court found that. What authority do you have for that? What case says that? There are a number of cases that we cited in our papers, and I can give you specific names at the rebuttal, but this was a contested issue at the trial court level, and the trial court found that you do not need to have a non-compete in order to have an inevitable disclosure remedy, and numerous Ohio courts have held that. So you need to demonstrate an employee with a high level of technical information, which exists here, you need to show moving to a competitor to perform a similar role, which we can show here, and then the last piece you have to show is some sort of reason to distrust or some sort of intent to misappropriate. We don't have to show actual misappropriation, we have to show an intent, and if somebody, as one of their literal last acts with an employer, initiates the print process on four documents, and then under oath rules out all of the exculpatory explanations. Can I ask a question? Yes. I think you would agree both sides that if the district court applies the correct four-part test, doesn't otherwise commit a legal error, they have some discretion when it comes to whether to grant the PI. Yes. So we review that general point with abuse of discretion review. Why, since your threshold argument is that the wrong standard was applied, why would we apply it on appeal? Why wouldn't we send it back and just let the district court apply the right standard, given that they're supposed to get some discretion here? At a minimum, I think your honor should send it back on remand to apply the correct standard. So at a minimum, I might be right, why am I not just right to do that? To go beyond that, a trial court does get significant deference with respect to applying standards, making credibility assessments, etc. However, in the Harrison v. Monumental Life case, which is 333 Fed 3rd 717 from the Sixth Circuit, you don't have to defer to a trial court's credibility assessment. If documents or objective evidence contradict the witness's story, or the story itself may be so internally inconsistent or implausible on its face, that a reasonable fact-finder would not credit it. And that's what I think you have here, because there is no... I see that you took five minutes of rebuttals at your plan. Yes. Okay, well I'm gonna hold you to that, but not let you do more than ten. Okay. We'll hear from the other side and you'll get your full rebuttal. Okay, thank you, your honor. Good morning. Good morning, your honors. May I begin? Yes. Good morning, Phil Eikenrode on behalf of the Appley Consolidated Precision Products Corp. In the room with me is Joseph Nero and Nancy Oliver, who represented Mr. Daugherty. I'll be handling the argument for both sides. Your honor, as the court has held in numerous cases, including last month in Fetch, which kind of brings us to the whole legal question issue, the court can affirm the denial of a motion for preliminary injunction on any grounds supported. Let's talk about this threshold question. I mean, doesn't Fetch kind of establish or start to take us down the road that the appellant's right, that this clear and convincing test for each element is probably not the right test? I mean, I'm gonna guess you really want to spend time on alternative grounds for affirmance. I'm not gonna prevent that, but I do want to establish what to do about this threshold point. Your honor, I believe in in the wake of Fetch that the district court's use of clear and convincing throughout its decision does not square with Winter and Rule 65. I agree generally. Do you agree that the clear showing of Winter is to the conglomerate showing of all four, as opposed to what you do as to each of the four parts? Yeah, Winter specifically, the clear showing was focused on the reparable injury prong, because in that case the district court had issued an injunction despite finding that there was only a likelihood of a reparable injury, and the Supreme Court said well that's not that's not good enough despite, even if you've got a really clear showing on likelihood of success on the merits, you still have to show likely a reparable injury. So although the Supreme Court's decision focused on that prong, I think it could be well read to apply to effectively the totality of all four together. And Mr. Alcon's right in that there is a sliding scale. The stronger one prong is, the weaker another prong can be to still win. I believe starting at the third prong is not the maybe the best way to kind of bootstrap that, but I would agree with your honor that Winter would. Okay, so that's just first preliminary point. Second preliminary point, given that the district court does get discretion over all of these things, again I'm not trying to cut you off on this your alternative grounds for but why wouldn't we let the district court take a fresh look at this under the right test? Understood. I think if you read the district court's opinion, the use of the term clear and convincing while again present in the decision, I think seven or eight times, could be read to be at best superfluous. Because I think the kind of the point here is when we're talking about burden of proof, clear and convincing, or preponderance, that concept either way doesn't really fit within Rule 65 or the notion of a preliminary injunction at all. Those are those are trial issues, right? Or summary judgment issues, right? Rule 65, as the court said in Winter, is the four prong test, right? And the words preponderance doesn't fit in there, clear and convincing doesn't fit in there, it's it's clear, right? Have you made a clear showing, period. So although the district court here did use that phrase a number of times, and we understand why in light of Winter that's an issue, I think the court's opinion could be read to be, you know, those words could be superfluous kind of at worst. Okay, so that's one possibility, but now go down the road of your alternative grounds for affirmance. There's no point wasting everyone's time by sending it back. Yes, your honor. On that point, the the district court's findings were were clear. Again, this is a 28 or 29 page decision, well reasoned. The court found that there was no evidence of misappropriation. We have this this whole notion of the print log which gets a lot of weight both at the district court level and in the papers obviously. Mr. Doherty unequivocally testified he did not print these documents, period, full stop. There is a thing that we we kind of, I won't speak for Mr. Elkhon, but we all learned about in this case, which is the that there is something called a print log. So when you either, what all three experts testified to... It's real, it's not phantom. The print log is a real thing, correct your honor, and the experts testified that that could be initiated by a print preview. Clicking on it might might spool up the print log or something called a spool log which basically is the computer saying, oh you're looking at this document, you might need to print it soon, so let me kind of get started, right? That doesn't mean it was actually printed. Now, Mr. Doherty, as Mr. Elkhon correctly stated, Mr. Doherty stated at the hearing he couldn't remember doing something that would have initiated that, but he unequivocally testified, and this evidence was unrebutted, he did not print them. The testimony at the hearing also was that these are really large spreadsheets. I mean this is not like printing a customer list that's one page that you can tuck in your jacket pocket and walk out the door. This would be printing, I believe the testimony was, you know, perhaps hundreds of pages of Excel spreadsheets. And the notion was that on his last day of work he did this four times and walked out the door with them under his arm, despite the fact that no witness, including theirs, testified having seen him. Does this technology explain how many things were printed? Does it say whether something actually was printed? No, Your Honor, it just says that the print log, I'm sorry, that the print, the spool log was initiated. That would have to be a necessary step for something to be printed. That doesn't mean it actually was printed. Is there anything in the record to suggest whether this individual typically printed things? We have judicial colleagues, some of our judicial colleagues print a lot, some don't print as much. I won't ask you to tell us which one you are, Judge, but the testimony at the hearing was that, the short answer is no, that he did not regularly print. The testimony at the hearing was that he would often be sent documents as part of a particular project he was working on. Mr. Abdu Abdullah, who is one of PCC's key witnesses at the hearing, testified that Mr. Daugherty, it made sense for him to be looking at those particular documents in his last few days. PCC was planning to go to a customer visit in Orlando and he asked Mr. Daugherty to kind of help him get a quote package ready to go, so it made sense. It wasn't like he was looking at documents that had nothing to do with the scope of his work. These are things that he would be working on up to and including his final day. I also point to the district court's finding as to kind of credibility of the witnesses generally. So Mr. Daugherty was found by all witnesses who testified, again including PCC's own witnesses, to be credible, to be upstanding, to be ethical. They testified that this this guy was the proverbial Boy Scout, right? So to Mr. Alcon's point about whether inevitable disclosure kicks in, whether there's some outside indicia that this is the kind of person who probably will do something bad with materials they take, there was no evidence at the hearing to suggest that. Also the district court found that PCC's witnesses were were not credible. Mr. Polin, who testified for PCC, was found that his declaration that he had submitted was inaccurate. So Mr. Polin submitted a declaration in support of the renewed motion for preliminary injunction that definitively stated that Mr. Daugherty printed these documents, quote, while ostensibly on vacation, giving an additional nefarious cloud to what was going on, suggesting that he had somehow snuck back into the building when he was supposed to be at the beach and done this, right? However, Mr. Polin admitted on cross-examination at the hearing that he had not done the simple act of going and asking the general manager at the plant, hey was Justin in the office these past two days? If he would have, he would have been told he was here one day and then he took a half day and went on vacation with his family. So the district court gave great weight to the relative credibility of the witnesses at the hearing. Also I point the court to the court's findings in the decision regarding the, what I'll call, I don't think the court used this term, but I'll call the revolving door between these two companies. This is a very niche industry that is, by coincidence, disproportionately concentrated in the Cleveland, Ohio area, believe it or not, and the testimony at the hearing was that there are dozens, literally dozens, of employees who have gone from one company to the other or vice versa and never in the history of the, you know, decades of this happening has there been any actual or threatened misappropriation. So in fact, two witnesses flagged by the court, Rachel Harmon and Chris Miranda, who the court flagged, quote, wrote the book on PCC's IGT airfoil operations. They now work for us and there's been no suggestion that they've done anything wrong. There's been no litigation filed against them and the court gave great weight to the fact that, look, both companies seem to be respecting each other's trade secrets and confidentiality obligations of former employees so that she, you know, gave that additional weight in the finding as well. Your Honor, do we have any other questions? Is there anything wrong with clearly presenting your argument in less than 15 minutes? That can be a sign of good advocacy. Okay, very good. If the court has no further questions, we ask you to affirm. Thank you so much. Thank you very much. We'll hear Mr. Alcon. I think you have some rebuttal. Thank you, Your Honor. So picking up where I left off, it sounds like I'm right that you obviously want the district court not to be affirmed, but it sounds like both of you want us to decide the case. Am I right about that? Well, I mean, I know you would like to know what we would do before you say that. I am curious what your position is on whether, if you're right about the clear and convincing error, what's your preference? Is your preference that we send it back to let the district court apply the right test or is your preference that we resolve it on this record? My preference would be a finding that the trial court committed a legal error. I'm gonna get to it. And a finding that the trial court committed a factual error in deeming the explanation of Justin Doherty for the print logs as credible. The one missing piece for an inevitable disclosure remedy, and Your Honor, Judge Davis, the case I was trying to think of was the PolyMet case that we cited in our papers. The district court correctly set forth the requirements for inevitable disclosure. I mean, everybody agrees it is a disfavored remedy. It's only for specific circumstances, and those circumstances are when you have an employee with a substantial amount of trade secret information, often in a science or technical area, which exists here. You have that employee, a high-level employee, moving to a competitor in an analogous role, working on the same or product line. There's no dispute about that here. And then the trial court said the last thing that we needed to show in the absence of a non-compete is some sort of intent to misappropriate or some other reason to distrust somebody. And what I would like the Sixth Circuit Court of Appeals to find is that when the trial court said, I believe Justin Doherty did not print these four documents, that was a clear error because there is no plausible explanation for the print logs. Let's assume we're not going to do that. Okay. Right? Let's assume you win in the sense that it goes back. Mm-hmm. I'm just curious, do you expect, I guess it depends on what the judge allows, do you expect the record to be supplemented in any way with further evidence or any sort of hearings? I don't think so. It's an interesting question. I would expect that because there was a well-developed factual record at the trial court level, you know, we had an all-day preliminary injunction hearing. My expectation would be that the court, the trial court, would either ask for briefing or oral argument or both. Essentially saying, okay, now that I have to apply the clear and convincing standard based on the fetch pet care case from the Sixth Circuit, tell me, would not be applying the clear and convincing standard. Oh, sorry, yeah, the preponderance, I have to apply the, yeah, I've been thinking a lot about these standards recently. I have to apply the preponderance of the evidence standard. Tell me, plaintiff, why you get your relief under that standard. Defendant, tell me why I shouldn't award that. Well, aren't we at a significant disadvantage to do what you want us to do, which is to find a clear error in the factual record then? Because after all, the district judge is the one who had the opportunity to actually hear from these witnesses and determine who the court thought was credible and who was not credible. No one is here in front of us today for us to make that determination, which is why we typically give a fairly high level of deference on that, on those types of findings. I agree with that a hundred percent, Your Honor, and under normal circumstances, I mean, if this were just about Judge Brennan's credibility assessment of Mr. Daugherty, I would lose. The issue is, as I set forth in my opening argument, there are certain circumstances where you do not defer to the credibility assessments made by a trial court, and that is when a witness offers up an explanation that's contradicted by documentary evidence. He has to have lied because this computer program shows it was teed up. It doesn't disprove the possibility the document was accessed, which might trigger a print possibility. So it's pretty hard to say he necessarily lied, which I think is what you're saying we have to do on this record. Well, Mr. Daugherty ruled out all of the exculpatory possibilities. So Mr. Daugherty said, I didn't print preview. You can't say he ruled them out when he said I didn't do it. Right, yeah. Mr. Daugherty said, I didn't initiate the print process and cancel it on four documents, and I didn't print preview these four documents. So once Mr. Daugherty, who the court found to be credible, has ruled out all of the innocent explanations, you're left with only one possibility, which is that he printed the documents. And to just sort of finish that thought, we don't... And argument. You can finish the thought and argument. Okay, yes. If, for example, he had plugged in a thumb drive and moved a bunch of documents to the thumb drive, and the thumb drive was unaccounted for, we wouldn't have to show video of him walking out the door with it. Once you establish intent to take documents, you don't need to have video of the person walking out the door and using them. The printing is the evidence that leads to the inference that he took the documents. Great. Thanks to both of you for your helpful arguments and for answering our questions, which we always appreciate. The case will be submitted...